UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES AND THE STATE OF NEW YORK, ex rel.,
LUCILLE ABRAHAMSEN,

                Plaintiffs,

- against -

HUDSON VALLEY HEMATOLOGY-ONCOLOGY ASSOCIATES, R.L.L.P. *et al.*

                Defendant.

Index No.
14 Civ. 2653 (KMK)

---

## NEW YORK STATE STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL

This Stipulation and Order of Settlement and Dismissal (the "Stipulation") is entered into by and among the State of New York, acting through the New York State Office of the Attorney General, Medicaid Fraud Control Unit ("MFCU") (collectively, the "State") Defendant Hudson Valley Hematology-Oncology Associates, R.L.L.P. ("Defendant" or "HVHOA" ") and Relator Lucille Abrahamsen (the "Relator") (hereinafter collectively referred to as "the Parties"), through their authorized representatives.

WHEREAS, at all relevant times, HVHOA is a New York limited liability partnership with its principal executive office located at 19 Baker Avenue, Suite 100, Poughkeepsie, New York 12601. The partners and owners of Defendant HVHOA are Ponciano Reyes, MD, Michael J. Maresca, MD and Ramamohana Kancherla, M.D. HVHOA currently has 6 offices in the State, and employs 14 doctors and about 20 nurses who perform a variety of hematological and oncological services;

1

WHEREAS, Relator filed an action under seal in the United States District Court for the Southern District of New York on April 14, 2014, captioned *United States and the State of New York ex. rel., Lucille Abrahamsen v. Hudson Valley Hematology-Oncology Associates, R.L.L.P., et al.*, Civil Action No. 14 CV 2652 (Stein, J.) (the "Civil Action"), pursuant to the *qui tam* provisions of the False Claims Act, as amended, 31 U.S.C. § 3729 *et seq.* (the "FCA"), and the State False Claims Act, State Finance Law § 187 *et seq.* (the "NYFCA"), against the Defendant;

WHEREAS, the United States and the State investigated the allegations in the Civil Action and the State contends that it has certain civil causes of action against Defendant for engaging in the following conduct hereinafter referred to as the "Covered Conduct;"

A.  Current Procedural Terminology Codes (CPT Codes) are used on public and private insurance claims forms by physicians to identify procedures and services that have been rendered to patients. Government payors such as Medicare and Medicaid use these codes to assist in determining whether the claims are covered and to calculate reimbursement payments. CPT Codes 99211, 99212, 99213, 99214 and 99215 are used to indicate various degrees of evaluation and management services ("E/M") provided to established patients when they receive treatment in a physician's office. These codes differ depending on whether the patient is seen by a doctor or nurse practitioner, the amount of time spent with the patient, and what services are performed.

B.  CPT Code 99211 is used for an office or outpatient visit that may not require the presence of a physician. The physician must be present in the office suite to provide supervision to the nursing staff when drugs such as chemotherapy are administered to patients. The cost of the administration of chemotherapy drugs and vitamin supplements, however, is subsumed or bundled in CPT Codes 96360-96375 and 96401-96425. Accordingly, when nurses provide a

variety of routine oncological services to patients, claims for such services cannot be simultaneously billed using Code 99211 and CPT Codes 96360-96375 and 96401-96425.

C. According to the New York Medicaid Program Physician Provider Manual, CPT Code 99212 should be only utilized for office or outpatient E/M visits with established patients when a doctor spends at least ten minutes face-to-face with the patient. Indeed, coding an office visit as CPT 99212 when another procedure is billed (*i.e.*, an injection or administration of chemotherapy (CPT Code 96401-96425)) requires the billing coder to enter a modifier to allow the additional service charges to be billed as CPT 99212. These modifiers are to be used only when a separate and distinct E/M service is performed.

D. Between July 2010 and June 2015 (the "Covered Period"), HVHO failed to comply with Medicaid rules and regulations for reimbursement by billing Medicaid for patient office visits under CPT Code 99212 in addition to billing on the same date for services performed by nurses for other procedures (*i.e.*, an injection or administration of chemotherapy) although the medical records contain no documentation reflecting that a separate and distinct E/M service was performed by a doctor. By engaging in this improper practice HVHO simultaneously billed for the administration of the drug by nursing staff and E/M services.

WHEREAS, as a result of the foregoing Covered Conduct, the State alleges that Defendant knowingly submitted or caused to be submitted false claims to the State's Medicaid program, in violation of the New York State False Claims Act, N.Y. State Fin. Law §§ 189 *et seq.*, Social Services Law § 145-b, Executive Law § 63(12), Executive Law § 63-c and the common law.

WHEREAS, the United States contemporaneously herewith is entering into a stipulation with Defendant to resolve the United States' claims against Defendant, which include, among other things, liability for the Defendant's submission of claims to the Medicare program.

WHEREAS, the total amount to be paid by Defendant to settle the claims of the United States and the State for the Covered Conduct is FIVE MILLION FIVE HUNDRED THOUSAND DOLLARS ($5,500,000.00) (the "Settlement Amount"); and

WHEREAS, to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation of these cause of causes of action, the Parties hereby reach a full and final settlement pursuant to the Terms and Conditions set forth below;

NOW THEREFORE, upon the Parties' agreement, IT IS HEREBY ORDERED that:

### TERMS AND CONDITIONS

1. The State hereby represents that it has the authority to enter into this Stipulation and effectuate a final settlement of the State's claims relating to the Covered Conduct on behalf of itself and all counties of the State participating in Medicaid payments to Defendant. It is understood that Defendant are entering into this Stipulation in reliance upon the foregoing representations of the State.

2. The Parties consent to this Court's exercise of subject matter jurisdiction over this action and personal jurisdiction over each of them with respect to this action.

3. HVHOA hereby admits, acknowledges as true, and accepts responsibility for the following conduct:

   a. During the Covered Period, HVHOA overbilled Medicaid by billing for evaluation and management services (CPT Code 99212) in addition to billing for routine procedures (such as chemotherapy or injections) administered by a

4

nurse on the same date, even though HVHOA had not documented that it actually provided any significant, separately identifiable evaluation and management services to the patients.

4. The total Settlement Amount to be paid by Defendant to settle the claims of the United States and the State related to the Covered Conduct is FIVE MILLION FIVE HUNDRED THOUSAND DOLLARS ($5,500,000.00)

5. Defendant shall pay to the State ONE HUNDRED EIGHT SIX THOUSAND DOLLARS ($186,000.00) (the "State Settlement Amount"). Payment of the State Settlement Amount shall be made no later than twenty (20) business days after the Effective Date (defined below in Paragraph 31). The State Settlement Amount shall be paid by certified check made payable to the "MFCU Restitution Fund."

6. The State Settlement Amount represents only the State share of Settlement Amount. The United States share of FIVE MILLION THREE HUNDRED FOURTEEN THOUSAND DOLLARS ($5,314,000.00) will be paid pursuant to separate stipulation between the United States and Defendant.

7. Subject to the provisions forth herein, and conditioned upon Defendant's full payment of the State Settlement Amount, the State releases Defendant, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations;; and the corporate successors and assigns of any of them ("Defendant's Affiliates") (collectively, the "Defendant Releasees"), from any civil monetary cause of action that the State has for the Covered Conduct under the New York State False Claims Act, N.Y. State Fin. Law §§ 189 *et seq.*, Social Services Law § 145-b, Executive Law § 63(12), Executive Law § 63-c, or the

common law theories of payment by mistake, money had and received, unjust enrichment and fraud.

8. Defendant agrees to cooperate fully and truthfully with the State's investigation of individuals not released in this Stipulation. Upon reasonable notice, Defendant shall encourage, and agree not to impair, the cooperation of their directors, officers, and employees, and shall use their best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of all such individuals. Defendant further agrees to furnish to the State, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in their possession, custody, or control relating to the Covered Conduct that they have undertaken, or that has been performed by another on their behalf.

9. Notwithstanding the releases given in Paragraph 7 of this Stipulation, or any other term of this Stipulation, the State specifically does not release any person or entity from any of the following liabilities:

   a. Any civil, criminal or administrative liability arising under state revenue codes;

   b. Any criminal liability;

   c. Any administrative liability, including mandatory or permissive exclusion from the State's Medicaid Program;

   d. Any civil or administrative liability that any person or entity, including any of the Defendant Releasees, has or may have to the State or to individual consumers or state program payors under any statute, regulation or rule not expressly covered by the release in Paragraph 7 above, including but not limited to, any and all

          claims involving unfair and/or deceptive acts and practices and/or violations of consumer protection laws;

    e. Any liability to the State (or its agencies) for any conduct other than the Covered Conduct;

    f. Any liability for personal injury, patient abuse or neglect arising from the Covered Conduct; and

    g. Any liability based upon obligations created by this Stipulation.

    h. The liability of the individuals.

    10. Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Stipulation but agree and confirm that this Stipulation is fair, adequate, and reasonable under all the circumstances pursuant to N.Y. State Fin. Law § 190(5)(b)(ii). Conditioned upon full payment of the State Settlement Amount, the Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, fully and finally and irrevocably releases Defendant and its parents and subsidiaries, predecessors, current and former parents, current and former owners, shareholders, members, agents, employees, directors, trustees, officers, affiliates, divisions, units, direct and indirect subsidiaries, successors, transferees and assigns, from any claims the Relator has asserted, could have asserted, or may assert in the future arising out of the Covered Conduct, including, without limitation, claims under (a) State Fin. Law § 189 *et seq.*, Social Services Law § 145-b, or the common law theories of payment by mistake, negligence, unjust enrichment, and fraud; and and (b) by reason of any cause, matter, thing, fact, circumstance, event or agreement relating to or arising from the Relator's Complaint or the United States Complaint under the State Fin. Law § 189 *et seq.*, Social Services Law § 145-b, or the common law theories of payment by mistake, negligence, unjust enrichment, and fraud, provided, however, that nothing

in this Stipulation shall preclude Relator from seeking to recover her expenses or attorney's fees and costs from Hudson Valley, its owners, successors or assigns pursuant to 31 U.S.C. § 3730(d) and State Fin. Law § 190(6)(a)(Awards to *qui tam* plaintiff).

11. Conditioned upon the State's receipt of the full amount of the State Settlement Amount, the State shall pay TWENTY-SEVEN THOUSAND NINE HUNDRED DOLLARS ($27,900) to Relator for her share by electronic funds transfer in connection with Relator's claims and allegations regarding the Covered Conduct and/or the Overpayments, no later than twenty-one (21) days after the State has received payment of the State Settlement Amount. Relator and her Counsel represent and warrant that they have not assigned, subrogated or transferred any claims or any interest in any claims falling within the scope of this paragraph. Nothing in this Stipulation shall preclude Relator and her Counsel from seeking to recover expenses, attorneys' fees, and costs pursuant to 31 U.S.C. § 3730(d) and State Fin. Law § 190(6)(a)(Awards to *qui tam* plaintiff).

12. Defendant waives and shall not assert any defenses Defendant may have to any criminal prosecution or administrative action relating to the Covered Conduct, based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Stipulation constitutes an agreement by the State concerning the characterization of the State Settlement Amount for purposes of New York State Tax Law.

13. Defendant and its current and former parent corporations; direct and indirect subsidiaries, affiliates; brother or sister corporations; divisions; and the corporate successors and

assigns of any of them, fully and finally release the State, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendant have asserted, could have asserted, or may assert in the future against the State, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the State's investigation and prosecution thereof.

14. In consideration of the obligations of the Relator set forth in this Stipulation, Defendant and all of its predecessors, successors and members together with their current and former parents, subsidiaries, successors, officers, directors, trustees, servants, employees, Defendant' Affiliates and assigns, fully, finally and irrevocably release the Relator and her heirs, executors, administrators, estates, successors, attorneys, agents and assigns, from all claims, causes or rights of action, demands, liabilities, or penalties of any kind or nature whatsoever, in law or in equity, that they had, have, or may have, against the Relator arising out of the Covered Conduct and the Relator's investigation and prosecution thereof.

15. Subject to the exceptions in Paragraph 9, and in consideration of the obligations of Defendant in this Stipulation, and conditioned upon Defendant's timely full payment of the State Settlement Amount, the State agrees to file a stipulation of dismissal with prejudice of the claims asserted in the Civil Action on behalf of the State; provided, however, that the Court shall retain jurisdiction over this Stipulation and each Party to the extent the obligations herein remain unsatisfied by that Party, including, but not limited to, Relator's right to seek to recover attorney's fees and costs and expenses from Hudson Valley, its owners, successors and assigns pursuant to 31 U.S.C. § 3730(d) and State Fin. Law § 190(6)(a)(Awards to *qui tam* plaintiff).

16. Defendant agrees to the following:

a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendant or their present or former officers, directors, trustees, employees, shareholders, and agents in connection with:

   i. the matters covered by this Stipulation or any stipulation with the United States related to the Covered Conduct;

   ii. the State's audit(s) and civil and any criminal investigat7ion(s) of the matters covered by this Stipulation or any stipulation with the United States related to the Covered Conduct;

   iii. Defendant' investigation, defense, and corrective actions undertaken in response to the State's audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Stipulation (including attorney's fees) or any stipulation with the United States related to the Covered Conduct;

   iv. the negotiation and performance of this Stipulation or any stipulation with the United States related to the Covered Conduct; and

   v. the payments Defendant make relating to this Stipulation or any stipulation with the United States related to the Covered Conduct including costs and attorney's fees,

are unallowable costs for government contracting purposes and under the Medicaid Program (hereinafter referred to as "Unallowable Costs").

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for in non-reimbursable cost centers by Defendant, and Defendant shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any Consolidated Fiscal Report ("CFR"), cost report, cost statement, information statement, or payment request submitted by Defendant or any of its member corporations or affiliates to the Medicaid Programs.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Defendant further agrees that within ninety (90) days of the Effective Date of this Stipulation it shall identify to applicable Medicaid fiscal agents, any Unallowable Costs (as defined in Paragraph 15(a)) included in payments previously sought from any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendant or any member corporations or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendant agrees that the State, at a minimum, shall be entitled to recoup from Defendant any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, appeals, or requests for payment. Any payments due after the adjustments have been made shall be paid to the State. The State reserves its rights to disagree with any calculations submitted by Defendant or any member corporations or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Defendant' or any member

corporations' or affiliates' CFRs, cost reports, cost statements, or information reports, appeals or other payment requests.

    d.    Nothing in this Stipulation shall constitute a waiver of the rights of the State to audit, examine, or re-examine the books and records of Defendant to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

    17.    Except as expressly provided to the contrary in this Stipulation, this Stipulation is intended for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 18 (waiver for beneficiaries paragraph), below.

    18.    Defendant agrees to waive and shall not seek payment for any of the health care billings covered by this Stipulation from any individual health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct

    19.    Except as provided in Paragraphs 10, 11 and 15, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation.

    20.    Each Party and signatory to this Stipulation represents that it freely and voluntarily enters into this Stipulation without any degree of duress or compulsion.

    21.    Any failure by the State to insist upon the strict performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and the State, notwithstanding that failure, shall have the right thereafter to insist upon strict performance of any and all of the provisions of this Stipulation.

22. This Stipulation is governed by the laws of the State of New York. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York.

23. For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

24. This Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof. This Stipulation may not be amended except by written consent of the Parties.

25. The undersigned represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and entities indicated below.

26. This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation. Signatures delivered by electronic mail as ".pdf" attachments to emails shall constitute acceptable, binding signatures for purposes of this Stipulation.

27. Defendant and its affiliates, officers, directors, agents, trustees, or employees agree not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any finding in the Agreement or creating the impression that this Agreement is without factual basis. Nothing in this paragraph affects Defendant's (a) testimonial obligations; or (b) right to take legal or factual positions in defense of litigation or other legal proceedings to which the State is not a party.

28. This Stipulation is binding on Defendant' successors, transferees, heirs, executors, administrators, estates and assigns.

29. This Stipulation is binding on Relator's successors, transferees, heirs, executors, administrators, estates, and assigns.

30. Any notices pursuant to this Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be given by hand delivery, express courier and/or email followed by postage prepaid first class mail, and addressed as follows:

TO THE STATE:

Sally G. Blinken
Special Assistant Attorney General, Medicaid Fraud Control Unit
New York State Office of the Attorney General
120 Broadway, 13th Floor
New York, NY 10271
Telephone: (212) 417-5263
Email: Sally.Blinken@ag.ny.gov

TO DEFENDANT:
Alfredo F. Mendez, Esq.
Abrams, Fensterman LLP
630 Third Avenue
5th Floor
New York, NY 10017
Tel: (212) 279-9200, ext. 324
Email: amendez@abramslaw.com

31. The "Effective Date" of this Stipulation is the date upon which it is entered by the Court ("Effective Date").

Dated: New York, New York
October 17, 2016

## THE STATE OF NEW YORK

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

By: *[signature]*
Sally G. Blinken
Special Assistant Attorney General
Medicaid Fraud Control Unit
Civil Enforcement Division
120 Broadway, 13th Floor
New York, NY 10271
(212) 417-5263

## DEFENDANT HUDSON VALLEY HEMOTOLOGY-ONCOLOGY ASSOCIATES

Dated: New York, NY
October ____, 2016

By:_____
ALFREDO F. MENDEZ
Counsel for Defendant
Abrams, Fensterman LLP
630 Third Avenue, 5th Floor
New York, NY 10017
Tel: (212) 279-9200, ext. 324
Attorney for Hudson Valley

Dated: _____, NY       By:_____
       October ___, 2016    Title:_____
                            Hudson Valley

Dated: _____, NY       By:_____
       October ___, 2016    Title_____
                            Hudson Valley

Dated: _____, NY       By:_____
       October ___, 2016    Title:_____
                            Hudson Valley

## THE STATE OF NEW YORK

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

By: _____
Sally G. Blinken
Special Assistant Attorney General
Medicaid Fraud Control Unit
Civil Enforcement Division
120 Broadway, 13th Floor
New York, NY 10271
(212) 417-5263


## DEFENDANT HUDSON VALLEY HEMOTOLOGY-ONCOLOGY ASSOCIATES

Dated: New York, NY
October 17, 2016

By: *Alfredo Mendez /s/*
ALFREDO F. MENDEZ
Counsel for Defendant
Abrams, Fensterman LLP
630 Third Avenue, 5th Floor
New York, NY 10017
Tel: (212) 279-9200, ext. 324
Attorney for Hudson Valley

Dated: Tarrytown, NY
October 17, 2016

By: _____
Title: _____
Hudson Valley

Dated: Poughkeepsie, NY
October 17, 2016

By: _____
Title: _____
Hudson Valley

Dated: POUGHKEEPSIE, NY
October 17, 2016

By: Raul R. Kauchueb
Title: Managing Partner
Hudson Valley

15

**RELATOR**

Dated: HIGHLAND, NY
October 17, 2016

By: _/s/ Lucille Abrahamsen_
LUCILLE ABRAHAMSEN

By: _/s/ Traci Buschner_
TRACI BUSCHNER, Esq.
Guttman, Buschner & Brooks PLLC
2000 P Street, N.W., Suite 300
Washington, D.C. 20036
202-800-3001
TBuschner@gbblegal.com
Attorney for Lucille Abrahamsen

SO ORDERED:

October 19, 2016

_/s/ Kenneth M. Karas_
HON. KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

16